FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

2009 AUG 31  PM 1:17

CASE NO. _____

U.S. DISTRICT COURT
MIDDLE DISTRICT FLORIDA
FORT MYERS, FLORIDA

RICHARD W. FULKS and
BONNIE FULKS, husband and wife,
on behalf of themselves
individually and all others similarly situated,

2:09 -cv-569 -FtM-29DNF

      Plaintiffs,

v.

KNAUF GIPS KG, a German corporation;
KNAUF PLASTERBOARD (TIANJIN) CO., LTD.,
a Chinese limited liability corporation; KNAUF
PLASTERBOARD (WUHU) CO. LTD., a Chinese
limited liability corporation; KNAUF
PLASTERBOARD (DONGGUAN) CO. LTD.,
a Chinese limited liability corporation;
USG CORPORATION,
a Delaware corporation, L&W SUPPLY CORP.
d/b/a SEACOAST SUPPLY, a Delaware corporation,
ALL INTERIOR SUPPLY, INC., a Florida corporation;
BANNER SUPPLY CO., a Florida corporation;
ROTHCHILT INTERNATIONAL LTD., a foreign
corporation; LA SUPREMA TRADING, INC. a
Florida corporation, LA SUPREMA ENTERPRISE,
INC., a Florida corporation; BLACK BEAR GYPSUM
SUPPLY, INC., a Florida corporation; I.B.S.A., INC.,
a North Carolina corporation;

      Defendants.                  /

**COMPLAINT-CLASS ACTION
JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Richard Fulks and Bonnie Fulks, bring this action on behalf of themselves

individually and on behalf of a Class of persons described below.  Plaintiffs bring this action

against the drywall manufacturers:  Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd.,

Knauf Plasterboard (Wuhu) Co. Ltd. and Knauf Plasterboard (Dongguan) Co., Ltd. (collectively

referred to herein as "Knauf"). Plaintiffs also bring this action against the drywall suppliers: USG Corporation, L&W Supply Corporation d/b/a Seacoast Supply, All Interior Supply, Inc. (collectively referred to herein as "USG"); Banner Supply Company; Rothchilt International Ltd. ("Rothchilt"); La Suprema Trading, Inc.; La Suprema Enterprise, Inc.; Black Bear Gypsum Supply, Inc.; and I.B.S.A., Inc. – all collectively referred to herein as "Suppliers." All facts contained in this complaint are alleged upon information and belief and based upon the investigation of counsel.

## JURISDICTION AND VENUE

1. This is a class action brought pursuant to Federal Rule of Civil Procedure 23.

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one plaintiff is diverse from at least one defendant.

3. Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events giving rise to these claims occurred in South Florida; Defendants and/or their agents were doing business in Florida; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

4. This Court has personal jurisdiction over the Defendants pursuant to Florida Statutes § 48.193 because Defendants personally, or through their agents, operated, conducted, engaged in or carried out a business or business venture in Florida. § 48.193(1)(a). Personal jurisdiction is also appropriate because Defendants and/or their agents committed a tortious act or acts within Florida. § 48.193(1)(b). Furthermore personal jurisdiction is warranted because Defendants have caused damage and injury to persons and property within the state through its

2

"[p]roducts, materials, or things processed, serviced, or manufactured" that "were used or consumed within this state in the ordinary course of commerce, trade, or use." § 48.193(1)(f)(2).

## INTRODUCTION

5.      Plaintiffs bring this action individually and on behalf of all other similarly situated owners of homes either in the State of Florida, or the United States as a whole, built using the defective drywall described herein.

6.      The drywall manufactured by the Defendants and used in the construction of Plaintiffs' and Class Members' homes is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes damage and corrosion ("the Defect") to home structure and mechanical systems such as air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring, and computer wiring, as well as personal and other property such as microwaves, utensils, personal property, electronic appliances, jewelry, and other household items ("Other Property"). The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure.

7.      This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted.  There is no repair that will correct the Defect.

8.      As a result of Defendants' conduct as alleged herein, Plaintiffs and Class Members have suffered economic losses by owning a home containing inherently defective drywall that has caused damage to their home and Other Property.

9.      Plaintiffs and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to:  repair/replacement of their home, Other

Property, and any materials contaminated or corroded by the drywall as a result of "off-gassing;" incidental and consequential damages; and diminution of value of their home.

10.    Further, as a result of Defendants' conduct as alleged herein, Plaintiffs and Class Members have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

## THE PARTIES

### PLAINTIFFS

11.    Plaintiffs Richard Fulks and Bonnie Fulks, live and reside in Lee County, and own a home located at 4304 Northwest 39th Avenue, Cape Coral, Florida 33993.

12.    Plaintiffs' home was built using Defendants' defective drywall in approximately 2005. Plaintiffs have had substantial problems with the home, including but not limited to the corrosive effects of the sulfur and/or other compounds in the drywall, and have suffered injury to personal and real property as a result of Defendants' conduct as further described herein.

### DEFENDANTS

**Manufacturer Defendants**

**Knauf Entities**

13.    Defendant Knauf Gips is a German corporation doing business in the State of Florida with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany.

14.    Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

4

15.    Defendant Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.

16.    Defendant Knauf Plasterboard (Dongguan) Co., Ltd. ("Knauf Dongguan"), is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong, China.

17.    Knauf Gips is a leading manufacturer of building materials and systems, including drywall. Knauf Gips is the parent corporation of its affiliates Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan (collectively "Knauf"). Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips, and all of the Knauf entities are acting as a joint enterprise and/or joint venture.

18.    The Knauf entities provide building materials and systems to customers in over 50 countries, including the United States. At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral. Knauf Tianjin sent an additional amount (characterized by company officials as "most" of its drywall) into Miami.

19.    Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the U.S. In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the U.S. All were imported by USG Corporation, one of the largest manufacturers of domestic drywall in the U.S. market.

5

20.     Knauf Tianjin admits that it manufactured and imported at least 20 percent of the imported Chinese drywall that came into the United States.

21.     At all material times hereto, Knauf Gips strictly controlled the product quality of its Chinese affiliates, and supervised, operated, trained and otherwise exercised control and/or had the right to control all of the operations of Knauf Tianjin, Knauf Wuhu, Knauf Dongguan, and their agents, apparent agents, and employees.

22.     Knauf, directly or through its agents, systematically and continuously manufactured, sold, distributed, marketed and placed within the stream of commerce tens of millions of square feet of defective drywall that went to numerous purchasers in the State of Florida, and that is now installed in numerous Florida homes, including Plaintiffs' home. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in Florida.

### Defendant Distributors/Suppliers

**USG Corporation Entities**

23.     Defendant USG Corporation is a Delaware corporation authorized and registered to do and doing business in the State of Florida. USG Corporation, together with its various affiliates, is the nation's largest distributor of drywall and related building products.

24.     Defendant L&W Supply Corporation is a Delaware corporation authorized and registered to do and doing business in the State of Florida, with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661. L&W Supply is a subsidiary of USG Corporation and also operates in Florida as Seacoast Supply.

25.     Defendant All Interior Supply, Inc. is a Florida corporation with its principal place of business located at 6969 West 20th Avenue, Hialeah, Miami-Dade County, Florida

ALTERS | BOLDT |BROWN | RASH | CULMO
Miami Design District, 4141 NE 2nd Avenue, Suite 201, Miami, FL 33137   Telephone 305-571-8550   Fax  305-571-8558 www.abbrclaw.com

33014. All Interior Supply is owned by L&W Supply, and is therefore also a subsidiary of USG Corporation.

26. USG Corporation, L&W/Seacoast Supply, and All Interior Supply are collectively referred to herein as USG.

27. USG, directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall. This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

28. Directly or indirectly through their agents, or affiliates, the USG Defendants' acts or omissions related to defective drywall have injured Plaintiffs as alleged herein. Defendants also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**Defendant Banner Supply**

29. Defendant Banner Supply is a Florida corporation with its principal place of business located at 7195 N.W. 30th Street, Miami, Miami-Dade County, Florida 33122.

30. Defendant Banner Supply directly or through its agents, exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall. This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

31. Directly or indirectly through agents or affiliates, Defendant Banner Supply's acts or omissions related to defective drywall have injured Plaintiffs as alleged herein. Defendant

7

also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**Defendant Rothchilt International Ltd.**

32.    Defendant Rothchilt International Ltd. ("Rothchilt") is a foreign corporation doing business in the State of Florida with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan, R.O.C.

33.    Defendant Rothchilt, directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall. This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

34.    Directly or indirectly through agents or affiliates, Defendant Rothchilt's acts or omissions related to defective drywall have injured Plaintiffs as alleged herein. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**The La Suprema Entities**

35.    Defendants La Suprema Enterprise, Inc. and La Suprema Trading, Inc. are both Florida corporations with their principal places of business both located at 2221 N.E. 164th Street, Suite 335, North Miami Beach, Miami-Dade County, Florida 33160.

36.    The La Suprema entities, directly or through their agents, exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall. This defective drywall went

8

to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

37.     Directly or indirectly through their agents, or affiliates, the La Suprema Defendants' acts or omissions related to defective drywall have injured Plaintiffs as alleged herein.  Defendants also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall in Florida.

**Defendant Black Bear Gypsum Supply, Inc.**

38.     Defendant Black Bear Gypsum Supply, Inc. ("Black Bear") is a Florida corporation with its principal place of business located at 2050 Tall Pines Drive, Suite B, Largo, Pinellas County, Florida 33771.

39.     Black Bear, directly or through its agents, exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall.  This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

40.     Directly or indirectly through agents or affiliates, Defendant Black Bear's acts or omissions related to defective drywall have injured Plaintiffs as alleged herein.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in Florida.

**Defendant I.B.S.A., Inc.**

41.     Defendant I.B.S.A., Inc.. is a North Carolina corporation authorized to do business and doing business in the State of Florida with its principal place of business located at

9

1801 Wal-Pat Road, Smithfield, North Carolina 27577. I.B.S.A. is also known as International Builders Supply Association and is a membership buying group of building materials.

42.    Defendant I.B.S.A., directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed within the stream of commerce substantial quantities of defective drywall. This defective drywall went to numerous purchasers in the State of Florida, and is now installed in numerous Florida homes, including Plaintiffs' home.

43.    Directly or indirectly through agents or affiliates, Defendant I.B.S.A.'s acts or omissions related to defective drywall have injured Plaintiffs as alleged herein. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in Florida.

## GENERAL ALLEGATIONS

A.    **Chinese Drywall Distribution in Florida**

44.    The booming housing market in the United States, as well as the massive damage in 2005 caused by Hurricanes Katrina and Wilma, created a critical national shortage of building materials, including drywall, with particular shortages in Florida and other southern states. The result of this shortage was that builders, suppliers, and importers brought significant stocks of foreign manufactured Chinese drywall into the United States beginning in 2004.

45.    Tens of millions of square feet of Chinese drywall was used in the construction of homes in, between 2004 and the present. At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

10

46.    Nearly 60 percent of the Chinese drywall that came into the United States came in through Florida ports.

**B.    Drywall Background**

47.    Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply, board.  A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

48.    In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.  It is then ground into a powder and mixed with water to form a slurry which is poured between two paper layers like a sandwich.  When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

49.    Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

50.    Synthetic gypsum is generally manufactured with byproducts of coal-fired power plants.  Coal combustion byproducts ("CCBs") are the inorganic residues that remain after pulverized coal is burned.  The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

**C.    The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur**

51.    The Chinese drywall manufactured, sold and/or used by Defendants contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.

52.    When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.  The problem of sulfide emissions from drywall is well understood in the drywall industry and has been studied for many years.

11

The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

53.     Sulfide emissions from drywall have been a particular problem in landfills and, as such, many landfills refuse to accept drywall or place strict limitations on the amounts and on the ways in which drywall can be disposed. An independent consulting firm, hired by a Miami-based builder, has concluded there is little doubt that the Chinese drywall manufactured, sold and/or used by Defendants is the cause of the corrosion in many residents' homes.

54.     One of the managing principals of the independent testing firm stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

55.     The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

56.     Hydrogen sulfide was found in previous testing that the company conducted on the Chinese drywall: "Our previous studies indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emissions from Chinese drywall."

57.     Knauf has stated that problem drywall came from a specific gypsum mine that supplied various manufacturers. But other published reports from independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

58.     One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

ALTERS | BOLDT |BROWN | RASH | CULMO
Miami Design District, 4141 NE 2nd Avenue, Suite 201, Miami, FL 33137  Telephone 305-571-8550  Fax  305-571-8558 www.abbrclaw.com

59. Plaintiffs and Class Members could not have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

**D.    The Need for Medical Monitoring for the Health Effects of Sulfur Emitting Drywall**

60. Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

61. The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

62. Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

63. Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

64. Defendants' tortious acts and omissions have significantly increased the risk of anyone living in the home contracting a serious latent disease.

**E.    The Mere Existence of Chinese Drywall Has Diminished Home Values**

65. Because neither the long term effects of Chinese drywall, nor the triggers of the adverse chemical processes within the Chinese drywall are yet fully understood, the mere existence of Chinese manufactured drywall in a particular home causes automatic and substantial diminution of value to a home. All homes found or disclosed to have Chinese drywall are tainted by the mere existences of the drywall in the home, even if it is ultimately determined that some

13

drywall manufactured in China is not defective. While the Plaintiffs and Class Members are certain that their home contains defective Chinese drywall, if it is ultimately determined that the drywall in Plaintiffs' and Class Members' homes are not defective, even though it was manufactured in China, Plaintiffs and Class Members have still sustained a diminution of value of their home and are entitled to recover damages for that diminution of value.

### Conditions Precedent

66.    All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or were waived by Defendants.

### CLASS REPRESENTATION ALLEGATIONS

67.    Plaintiffs bring this case as a Class Action pursuant to Federal Rule of Civil Procedure 23, individually on behalf of themselves and the following proposed Class, defined as:

> All owners and residents of residential homes in the United States containing drywall that was designed, tested, manufactured, marketed, sold, wholesaled, distributed, and/or supplied by Defendants. All members of the class are seeking compensatory damages for damage to real and personal property, and injunctive and/or equitable relief for environmental and medical monitoring.

Expressly excluded from the Classes defined above are:

A.    Defendants and any entities in which Defendants have a controlling interest;

B.    Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.    The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and

D.    All persons or entities that properly execute and timely file a request for exclusion from the Class.

14

68.    In the alternative or as a sub-class, Plaintiffs bring this case as a Class Action pursuant to Federal Rule of Civil Procedure 23, individually on behalf of themselves and the following proposed Class, defined as:

> All owners and residents of residential homes in the State of Florida containing drywall that was designed, tested, manufactured, marketed, sold, wholesaled, distributed, and/or supplied by Defendants. All members of the class are seeking compensatory damages for damage to real and personal property, and injunctive and/or equitable relief for environmental and medical monitoring.

Expressly excluded from the Classes defined above are:

A.    Defendants and any entities in which Defendants have a controlling interest;

B.    Any entities in which Defendants officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

C.    The Judge and Magistrate to whom this case is assigned and any member of the Judge's or Magistrate's immediate family; and

D.    All persons or entities that properly execute and timely file a request for exclusion from the Class.

**NUMEROSITY**

69.    The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

15

**COMMONALITY**

70.    Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to, the following:

    a.    whether Defendants manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, installed and/or sold defective drywall products;

    b.    whether Defendants' drywall contains latent and/or manifest defects in the form of emitting sulfides and other chemicals;

    c.    whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct;

    d.    whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct;

    e.    whether Defendants' conduct in manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling their drywall breached the duty of care owed by Defendants to Plaintiffs and Class Members;

    f.    whether Defendants are strictly liable for selling a defective product;

    g.    whether Defendants failed to warn Plaintiffs and Class Members of the dangers and hazards related to the defective drywall;

    h.    whether Defendants' conduct constitutes negligence;

    i.    whether Defendants breached warranties;

    j.    whether Defendants breached implied warranties of merchantability;

k.    whether Defendants breached implied warranties of fitness for a particular purpose;

l.    whether Defendants should create and fund an emergency notice program, environmental monitoring, and/or a medical monitoring program;

m.    whether there is a need for necessary home inspection, and monitoring of the potential health risks associated with the drywall's defects; and

n.    whether Plaintiffs and Class members are entitled to attorney's fees, and if so, in what amount.

**TYPICALITY**

71.    The legal claims of Plaintiffs are typical of the legal claims of other members of the Class. Plaintiffs have the same legal interests as other members of the Class.

72.    The Plaintiffs and each member of the Class have defective drywall in their homes. Due to the drywall in Plaintiffs' and Class Members' homes, Plaintiffs and Class Members suffered damages in the form of economic damages, and the need for injunctive and equitable relief, as set forth herein.

73.    Plaintiffs and Class Members' homes and personal property have sustained the same type of economic damage and potential physical harm due to the defective drywall. Thus, the legal remedies available to Plaintiffs and the Class Members are the same due to the wrongful conduct of Defendants. The Plaintiffs' claims satisfy the typicality requirement.

**ADEQUACY OF REPRESENTATION**

74.    Plaintiffs are adequate representatives of the Class and together with legal counsel will fairly and adequately protect the interests of the Class. Plaintiffs have no conflicts with the Class and are committed to the vigorous prosecution of this action and have retained competent

ALTERS | BOLDT |BROWN | RASH | CULMO
Miami Design District, 4141 NE 2ⁿᵈ Avenue, Suite 201, Miami, FL 33137  Telephone 305-571-8550  Fax  305-571-8558 www.abbrclaw.com

counsel experienced in litigation of this nature to represent them. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. Moreover, the class representatives' interests are aligned with the Class Members and it is unlikely there will be a divergence of viewpoint.

75.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the class.

**RULE 23(B) CERTIFICATION**

76.     Class certification in this action is appropriate because:

a.  Pursuant to Fed.R.Civ.P. 23(b)(1)(A), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible duties for Defendants under the law alleged herein.

b.  In seeking declaratory relief from Defendants' conduct alleged herein, pursuant to Fed.R.Civ.P. 23(b)(2), Defendants have acted or refused to act on grounds that apply generally to the Class, such that declaratory relief would be appropriate to the Class as a whole.

c.  Pursuant to Fed.R.Civ.P. 23(b)(3) the questions of law and fact common to all Class Members predominate over any questions that might arise as to an individual member, such that a Class Action is the superior, fair and efficient method of adjudicating this controversy where, as here, individual claims would be identical or nearly identical.

18

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

77.    The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment.  By failing to disclose a known defect to Plaintiffs and Class Members, and misrepresenting the nature of their product as safe for its intended use, Defendants actively concealed from Plaintiffs and Class Members the true risks associated with their drywall.

78.    Plaintiffs and Class Members could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

79.    In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true information about their product and they failed in that duty to Plaintiffs and Class Members.

80.    Plaintiffs and Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

### COUNT I

### NEGLIGENCE
### (Against All Defendants)

81.    Plaintiffs incorporate and restate paragraphs 1-80 as if fully set forth herein.

82.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, installation, marketing, and/or selling of the defective drywall to prevent the drywall from containing Defects as set forth herein.

19

83.    Defendants also owed a duty to Plaintiffs and Class Members to adequately warn of their failure to do the same; instruct the Plaintiffs and Class Members of the Defects associated with drywall; not to misrepresent that the drywall was safe for its intended purpose when, in fact, it was not; and not to conceal information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall.

84.    Defendants were negligent and breached their duty to exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of drywall. Defendants further breached their duty to adequately warn of their failure to do the same.

85.    Defendants further breached their duty by: failing to adequately warn and instruct the Plaintiffs and Class Members of the Defects associated with drywall; misrepresenting that drywall was safe for its intended purpose when, in fact, it was not; concealing information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall; and improperly concealing and/or misrepresenting information from the Plaintiffs and Class Members concerning the severity of risks and dangers of the Defendants' drywall and/or the manufacturing Defect.

86.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic and other damages and are entitled to recover monetary damages for: diminution of value of their home, replacement/repair of their home; the removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal

20

surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

87.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while their home is being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; and other related expenses.

88.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have suffered or will suffer economic and non-economic damages because they have incurred or will incur personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards from the adverse health effects of the defective drywall.

89.     Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

## COUNT II

### STRICT LIABILITY
(Against all Defendants)

90.     Plaintiffs incorporate and restate paragraphs 1-80 as if fully set forth herein.

91.     This count addresses the unlawful practice of placing a defective product – defective drywall – into the stream of commerce through the design, testing, manufacture, export, import, distribution, delivery, supply, inspection, installation, marketing, and/or sale of the drywall at issue.

92.     Defendants' are in the for-profit business of manufacturing and supplying drywall for use in the construction of homes in the United States and the State of Florida.

ALTERS | BOLDT |BROWN | RASH | CULMO
Miami Design District, 4141 NE 2nd Avenue, Suite 201, Miami, FL 33137   Telephone 305-571-8550   Fax  305-571-8558 www.abbrclaw.com

93.     Defendants placed defective drywall into the stream of commerce for use in the construction of Plaintiffs' and Class Members' homes. Plaintiffs and Class Members are and were foreseeable consumers, users or handlers of drywall. The drywall was defective at the time Defendants' introduced it into the stream of commerce. By the time the drywall left the Defendants' hands, the risks associated with the product far outweighed its benefits.

94.     At all material times, the defective drywall and homes or structures containing defective drywall were used for their intended purposes and the defective drywall was installed in the normal course of construction without any known changes or alterations to its form or design.

95.     The defective drywall was incorporated into the homes and structures sold to Plaintiffs and Class Members before the damages to Plaintiffs and Class Members were caused.

96.     Unknown to and hidden from Plaintiffs and Class Members, the drywall installed in their homes was defective because it contained toxic chemicals that damaged homes, fixtures attached thereto, and personal property contained therein, and rendered the homes unsafe and/or uninhabitable. The drywall also did not conform to applicable building standards, guidelines and/or codes intended to protect Plaintiffs and the Class.

97.     If Defendants had exercised that degree of care that a prudent or reasonably cautious person acting under the same circumstances would exercise, they could have foreseen that the drywall was defective and that damages to Plaintiffs and the Class Members would reasonably be expected to ensue as a result of the acts and/or omissions of Defendants. No prudent buyer of a home with the defective drywall product could be expected to determine on his or her own that the product was dangerous and defective.

22

98.    Defendants had a duty to provide Plaintiffs and Class Members with a safe and properly functioning product. This is a duty Defendants failed to uphold.

99.    Because the product created an unreasonable risk to Plaintiffs' and Class Members' homes and persons, Defendants are strictly liable for economic and physical injuries to Plaintiffs and Class Members.

100.    Defendants not only designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and sold poorly designed and defective drywall, but also failed to give Plaintiffs adequate warning regarding the risks associated with defective drywall product.

101.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur substantial economic and physical losses.  These economic and physical losses include, but are not limited to, damage to the real and personal property of Plaintiffs and Class Members; diminution of value of Plaintiffs' and Class Members' homes; and substantial reconstruction and repair of Plaintiffs' and Class Members' homes. Incidental and consequential damages that have been incurred or will be incurred by Plaintiffs and Class Members include the costs of moving while Plaintiffs' and Class Members' homes are being repaired; renting of comparable housing during the duration of the repairs; and other related expenses.

102.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have suffered or will suffer economic and non-economic damages because they have incurred or will incur personal injuries and are experiencing or at risk of experiencing serious and dangerous health hazards from the adverse health effects of the defective drywall.

ALTERS | BOLDT |BROWN | RASH | CULMO
Miami Design District, 4141 NE 2ⁿᵈ Avenue, Suite 201, Miami, FL 33137  Telephone 305-571-8550  Fax  305-571-8558 www.abbrclaw.com

## COUNT III

### EQUITABLE RELIEF TO PROVIDE MEDICAL MONITORING
(Against All Defendants)

103.    Plaintiffs incorporate and restate paragraphs 1-80 as if fully set forth herein.

104.    Plaintiffs and Class Members have been exposed to toxic chemicals emanating from the defective drywall at issue in this matter that alone, or in combination with other chemicals in the home, that have or may lead to serious medical problems for those persons exposed.

105.    Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur compounds being emitted from the defective drywall are very hazardous. For example, Hydrogen Sulfide ("H2S"), one of the compounds found in the drywall is a broad-spectrum poison – meaning it can attack more than one system of the body simultaneously. H2S most commonly affects the central nervous system. Through a complex reaction the H2S prevents oxygen from reaching cells in the body, essentially preventing them from "breathing."

106.    While the short term exposure to these chemicals causes various degrees of respiratory and neurological problems, it is unknown what the long term effects of exposure will be and the permanency of any such conditions. Thus, the need for medical monitoring exists.

107.    As a direct consequence of the wrongful and/or tortious acts and/or omissions of Defendants' conduct, anyone living in a home with defective drywall has been exposed to toxic chemicals, such as H2S, in quantities sufficient to harm a person living in the home.

108.    Plaintiffs and Class Members will suffer irreparable injury if the Court does not order injunctive relief and medical monitoring. Because no adequate remedy at law exists for the conduct of Defendants, equitable and injunctive relief is appropriate.

24

109.    Any harm that could arguably be suffered by Defendants as a result of a court order for medical monitoring is outweighed by the harm that Plaintiffs and Class Members will suffer if medical monitoring is not ordered and Plaintiffs and Class Members suffer severe medical problems as a result.

110.    Considering the pervasive use of the defective drywall and its toxicity, and the interest in protecting the health of the citizenry, it is in the public interest to order medical monitoring of Plaintiffs and Class Members.

111.    Additionally, for all of the foregoing reasons stated in this section, until it has been conclusively established that all defective drywall has been removed and that the air quality in affected homes is safe, as part of the medical monitoring, Defendants should bear the expense of air and environmental monitoring in Plaintiffs' and Class Members' homes.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the class, request that this Honorable Court grant the following relief:

a.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class, finding that Plaintiff is a proper representative of the class and that her counsel is appropriate class counsel;

b.    An order requiring that Defendants pay compensation to Plaintiffs and the class to the full extent permitted by the law;

c.    An order requiring medical monitoring;

25

d. Costs and expenses in this litigation, including, but not limited to, expert fees,

filing fees, and reasonable attorneys' fees; and

e. Such other relief as the Court may deem just and appropriate.

Dated: August 28, 2009                         Respectfully submitted,


Jeremy W. Alters (Fla. Bar No. 111790)
Kimberly L. Boldt (Fla. Bar No. 957399)
ALTERS BOLDT BROWN RASH & CULMO, PA
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
(305) 571-8550 phone
(305) 571-8558 fax
jeremy@abbrclaw.com
kimberly@abbrclaw.com

26